UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

RONNIE HILTON,

Plaintiff,

-v-

BEDFORD PAVING, LLC, HUDSON PAVING
and CONSTRUCTION, INC., CENTRAL
ROADWAYS, INC., CARRIAGE ENTERPRISES,
INC., GREG SCHIMPF, ANTHONY PILATO,
and STEPHEN CAROZZO,

Defendants.

DECISION AND ORDER

08-CV-6552 CJS

APPEARANCES

For Plaintiff:          Michael Cobbs, Esq.
                        Brown & Hutchinson
                        925 Crossroads Building
                        Two State Street
                        Rochester, New York 14614

For Defendants:         James C. Holahan, Esq.
                        Bond, Schoeneck & King PLLC
                        350 Linden Oaks, Suite 310
                        Rochester, New York 14625

INTRODUCTION

This is an action alleging claims pursuant to Title VII of the Civil Rights Act of 1964

("Title VII), as amended, 42 U.S.C. § 2000e *et seq*., the New York Human Rights Law

("NYHRL"), Executive Law § 290 *et seq*., and 42 U.S.C. § 1981 ("Section 1981").

Specifically, the claims are: 1) hostile environment and retaliation claims, under Title VII,

against Bedford Paving, LLC ("Bedford"), Hudson Paving and Construction, Inc.

("Hudson"), Central Roadways, Inc. ("Central"), and Carriage Enterprises, Inc. ("Carriage");

and 2) retaliation claims, under NYHRL and Section 1981, against all Defendants.  Now before the Court is Defendants' Motion for Summary Judgment (Docket No. [#45]).  As explained below, the Title VII claims are time-barred, but there are issues of fact as to whether Defendants retaliated against Plaintiff, in violation of the NYHRL and Section 1981.  Consequently, Defendants' application is granted in part and denied in part.

BACKGROUND

Unless otherwise noted, the following are the facts of this case, viewed in the light most-favorable to Plaintiff.  At all relevant times Carriage, Bedford, and Hudson were owned by Stephen Carozza ("Carroza").  Carriage was a commercial landscaping company. Bedford was an asphalt-paving company, and a subsidiary of Carriage.  Hudson was a paving and construction company which also provided snow-removal services (snow plowing).  At all relevant times, Hudson had a contract to remove snow from the Monroe County Airport ("the Airport").  In connection with this contract, Hudson entered a joint venture, with Central, a company owned by Anthony Pilato ("Pilato"), in which Hudson provided the snow-removal equipment, and Central hired drivers to operate the snow plows.  Hudson removed snow both inside and outside the Airport's security perimeter, and plow operators who worked inside the security perimeter were required to have a security clearance from the Airport.

Pursuant to Hudson's snow-removal contract with the Airport, Hudson was required to be available to remove snow at any time of the day or night.  In that regard, whenever Airport officials decided that snow removal was necessary, they called Hudson, and Hudson was required to begin plowing within one hour.  Therefore, when plowing was

2

requested, Hudson would call someone on its list of plow drivers, and if that driver did not call back within five minutes, it would call another driver, until it found one who was available to plow.

Plaintiff, who is African-American, began working for Bedford and Hudson in or about 1989.  Plaintiff performed both paving and plowing work, and was routinely laid off for periods of time between the paving season and the plowing season, after which he would be recalled for work.  Specifically, after the paving season ended Plaintiff would be laid off until it began to snow, at which time he would be called and asked to plow at the Airport.  There is no indication that Plaintiff plowed snow for anyone besides Defendants during the relevant period.

During the winter of 2004-2005, Central employed Plaintiff to plow at the airport, outside of the security perimeter.  Central also employed Greg Schimpf ("Schimpf"), who was responsible for overseeing plowing inside the security perimeter.  According to Plaintiff, Schimpf frequently referred to African Americans as niggers.  As to this allegation, although he does not specify any dates or times, Plaintiff alleges that Schimpf made statements including, "you plow like a nigger," "I guess I gotta call the nigger," and "you 'nigger rig' everything you touch."  Plaintiff indicates that Schimpf made such comments to other employees over the two-way radios that were in the plow trucks, though Defendants dispute that such trucks had two-way radios.

Plaintiff maintains that he complained to Carozza about Schimpf's comments, but Carozza did nothing about the situation.   Carozza, however, states that Plaintiff never complained to him about Schimpf until after the 2004-2005 plowing season had ended.

In or about September 2005, Plaintiff filed a complaint with the Monroe County Office of Affirmative Action, which investigated and found that Plaintiff's allegations were corroborated by other employees, including Joe Welch ("Welch"), Eric Benson ("Benson"), and Jimmy Mathis ("Mathis").  Carroza indicates that he subsequently disciplined Schimpf by suspending him.  Plaintiff denies that Carozza took disciplinary action against Schimpf, but his contention is based upon hearsay from a co-worker who allegedly saw Schimpf working during the period that he was supposed to be suspended.

Following Plaintiff's complaint to the Monroe County Office of Affirmative Action and the ensuing investigation, Plaintiff continued to perform paving work for Hudson until he was laid off in November 2005.  As mentioned above, it was normal for Plaintiff to be laid off during the period between the end of the paving season and the beginning of the snow plowing season, which usually began in late November.  According to Plaintiff, it snowed on November 23, 2005, but he did not receive a call asking him to plow.  Plaintiff concluded that he was being retaliated against, and on December 2, 2005, he sent a letter to the United States Equal Employment Opportunity Commission ("EEOC"), complaining that he had not been called to work. Docket No. [#53-1] at 2-3.  Defendants counter that because of mild weather, there was no need to perform plowing at the Airport until later in December 2005.[1]  More specifically, Carozza states, in an affidavit, that no plowing was performed at the airport prior to December 9, 2005. Carozza Aff. [#46-2] at ¶ 32.

---

[1]Plaintiff states, in conclusory fashion, that "it actually snowed prior to December 9, 2005," but does not indicate when it snowed or how much snow accumulated. Pl. Stmt. of Facts ¶ 116.  On October 28, 2010, Plaintiff's counsel executed an affirmation, in which he admits that he does not know when Defendants plowed during the relevant period. Cobbs Aff. [#36] at ¶ 35 ("Without discovery plaintiff does not know exactly what dates defendants plowed the Monroe County Airport during the 2005-2006 Winter season[.]").

On December 9, 2005, Doug Schimpf ("Doug"), who is defendant Greg Schimpf's brother, and who was also employed by Central, called Plaintiff's home at approximately 1:00 a.m.[2] to ask him to plow at the airport.  Plaintiff's wife answered the phone, and Doug indicated that he was calling about snow plowing.  Plaintiff's wife said that he was not home, and gave Doug his cell phone number.  Doug called Plaintiff's cell phone, and when Plaintiff did not answer, he left a message for Plaintiff, telling him to return the call if he wanted to plow.  Plaintiff never responded to Doug's message.  In that regard, Plaintiff states that he noticed a message on his cell phone, which stated, "call back if you want to plow," but "the voice in the message was not familiar to him and [he] did not know who the call came from." Pl. Stmt. of Facts at ¶ ¶ 83-84.  Plaintiff indicates that he attempted to figure out exactly who had called him, by using a "*66" feature on his home phone, but without success.   In short, Plaintiff contends that he did not return the call because he did not have the telephone number of the person who had left the message.  However, Plaintiff admits that he assumed that it was one of Defendants' employees calling him to plow. Pl. Aff. ¶ 79 ("At the time, I assumed it was from the defendants, while I don't actually know this for sure.").  As mentioned above, however, there is no indication that Plaintiff plowed snow for anyone besides Defendants.

At around this same time, Plaintiff was applying for a truck-driver's position with Veltri Trucking ("Veltri").   A few days after Plaintiff failed to respond to Doug's phone message, Carozza received a communication from Veltri, indicating that Plaintiff was seeking employment with Veltri, and asking for information about Plaintiff's work history.

---

[2]There is no indication that it was unusual for plow operators to be called at that hour.

Carozza contends that after Plaintiff failed to return Doug's phone call, and after he learned that Plaintiff was seeking employment with Veltri, he assumed that Plaintiff was not interested in working for him. Accordingly, Carozza maintains, he never called Plaintiff for any more snow plowing jobs. Plaintiff agrees that he began working for Veltri at that time, but he maintains that he was still interested in plowing snow. On this point, Plaintiff indicates that his employment with Veltri would not have prevented him from also plowing snow, and that it was typical for plow drivers to have other jobs.

On December 19, 2005, Plaintiff wrote a letter to the EEOC, which stated, in pertinent part:

> Earlier this month (December) I received a call about 1:16 or 1:18 am one morning, I'll have to wait to get my cell phone bill to give you the exact time. But I had gone out to help a friend and had left my cell phone in my truck. When I returned to my truck I played back the message and was told to "CALL BACK IF I WANTED TO PLOW" [sic] well the voice was not familiar, and there was no number, so whoever called me called from their private home phone.
>
> When I arrived home about 2:30 am my wife said that I had a call about plowing and when asked for a name she was told they would try my cell. Well I *66 [sic] and got nothing. And that was the last call I had from anyone about salting/plowing the airport. Well I believe that call was made because I had complained to Mr. Ron House at the Affirmative Action that none of us four were working. And that was an attempt for the guilty party to say that they had tried to contact me.
>
> Well since that call I have thus found out that Mr. Shimp [sic] the man in question and now also been put in charge of the outside of the gate which is where Mr. Benson and myself worked, by which Mr. Benson was my

boss.[3]  So now what they have done is to make it a very uncomfortable work environment by making Mr. Shimp our boss, and when I told this to Mr. House by voice mail, I have not heard from him, I do believe that this is more than he can handle.  As I have left Mr. House several messages and has not returned any of my calls. [sic]

Docket No. [#53-3] at 2.

After December 9, 2005, Plaintiff states that he attempted to call Carozzo "many times" to express his interest in plowing at the Airport, but Carozzo did not return his calls. Plaintiff contends that this was unusual, because Carozza had never ignored his calls prior to his complaint to the Monroe County Affirmative Action Office.  Plaintiff never received any additional calls asking him to plow.  Plaintiff also indicates that Mathis and Benson, who participated in the investigation by the Monroe County Affirmative Action Office, were also never called back to work. Pl. Stmt. of Facts ¶ 91.  However, Defendants have submitted an affidavit [#59-1] from Mathis, indicating that he is still employed by Bedford.

On or about December 30, 2005, Plaintiff, proceeding *pro se*,  filed[4] a discrimination complaint with the EEOC, alleging discrimination and retaliation.  The complaint was filed against one entity, "Bedford Paving Co."  The EEOC designated Plaintiff's complaint as case number 165-2006-00275.  The complaint referred to Schimpf's racial slurs and Plaintiff's complaints about them, and further stated:

---

[3]As mentioned above, Defendants maintain that it was Doug Schimpf, not Greg Schimpf, who was put in charge of plowing outside the security perimeter during the winter of 2005-2006.  Therefore it appears that Plaintiff was incorrect in believing that Greg Schimpf would be his supervisor.

[4]"In New York, a charge of discrimination may be filed with either the EEOC or the New York State Division of Human Rights.  Moreover, based upon a worksharing agreement between the EEOC and the NYSDHR, charges received by the Human Rights Division are automatically deemed dual-filed with the EEOC." *Campbell v. County of Onondaga*, No. 5:04-CV-1007 (NAM/GHL),  2009 WL 3163498 at *11 (N.D.N.Y. Sep. 29, 2009) (citations omitted).

November 23, 2005, was the first snow of the year.  I was not called in to work as I should have been on November 22, 2005.  None of the employees who participated in the fact finding conference have been called back to work.  The harasser is still working.  I believe I was denied recall, after 16 years on the job, in retaliation for complaining about discrimination[.]

Complaint [#1] at 12 (emphasis added).

Plaintiff subsequently retained an attorney, Michael Cobbs ("Cobbs").  On August 22, 2006, Cobbs wrote to the New York State Division of Human Rights ("NYSDHR"), enclosing a copy of Plaintiff's EEOC complaint, and asking that the "matter be transferred to the [NYSDHR], Rochester Regional Office for investigation and further handling."  In doing so, Cobbs maintains that it was not his intention to discontinue the EEOC action.  Instead, he contends that his intention was to have only the investigation of the matter transferred, since NYSDHR typically conducted a more thorough investigation than EEOC.  Cobbs further indicates that, in his experience, once the NYSDHR conducted its investigation, EEOC would "rubber stamp" NYSDHR's findings.  In any event, NYSDHR assigned the matter a case number, 10113824, and commenced an investigation.  During the course of such investigation Hudson, Central, and Schimpf were added as respondents to the complaint, along with Bedford.  Carriage, Pilato, and Carozza, though,  were never named as respondents in either the EEOC action or the NYSDHR action.

In addition to opening its own investigation upon receiving Cobbs' letter, NYSDHR also forwarded a copy of the already-filed EEOC complaint to the EEOC, which opened a duplicate case file for the matter, having case number 16G-2006-04677.  Consequently, at that point, Plaintiff had one complaint pending with NYSDHR and two complaints

pending with EEOC, all involving the same subject matter, but all having different case numbers.

On April 17, 2007, EEOC dismissed case number 165-2006-00275, and issued a right-to-sue letter.   The dismissal notice indicated that EEOC was closing its file purportedly because "Respondent employ[ed] less than the required number of employees or is not otherwise covered by the statutes."   The dismissal notice and right-to-sue letter indicated that it was sent to three persons: Defendants' attorney; Cobbs; and Plaintiff.  The letter was properly addressed, and there is no indication that any of the letters were returned to the EEOC undelivered.  On April 18, 2007, Defendant's attorney received the right to sue letter in the mail.   Cobbs and Plaintiff, however, maintain that they never received the right to sue letter.

Nevertheless, on June 8, 2007, Cobbs wrote a letter to the NYSDHR, referencing the dismissal of the EEOC complaint.  In pertinent part, Cobbs' letter stated:

> Re: Ronnie Hilton v. Bedford Paving Company EEOC Charge No. 165-2006-00275
>
> ***
>
> Please find enclosed documents which we believe are relevant in the above referenced matter and which you may not be in possession of.  I was mistaken in my telephone conversation with you regarding being in possession of certain evidence.  Another attorney in my office, Spencer Ash, Esq., has been handling the file and it was my understanding that we were in possession of certain affidavits and evidence which we do not have in our possession at this time.  *As I indicated the EEOC commenced an investigation in this matter, but in the end closed its file because the respondent allegedly [sic] employees less than 15 people, so the EEOC has no jurisdiction.*  We have recently requested the EEOC's investigative file and will forward a copy to you as soon as we receive it.

Cobbs letter to NYSDHR, Docket No. [#37-4] at 2 (emphasis added).

On June 26, 2007, NYSDHR issued a written "Determination After Investigation" ("NYSDHR Determination") concerning Plaintiff's complaint. The document's caption listed the following entities as "respondents": "Bedford Paving Company, Hudson Paving and Construction, Inc., Central Roadways, Inc., Greg Schimpf as Aider and Abettor." The statement did not refer to Carriage, Pilato, or Carozzo. The NYSDHR Determination indicated that NYSDHR found probable cause to believe that the respondents had engaged in, or were engaging in, unlawful discrimination.[5] The NYSDHR Determination further stated that the matter was "recommended for public hearing," and that the parties would be advised of further proceedings.

More than one year later, in August 2008, Plaintiff asked NYSDHR to dismiss the administrative proceeding, so that he could "pursue his claims in United States District Court." Complaint [#1] at ¶ 21. The defendants in that proceeding opposed the dismissal. In that regard, on August 11, 2008, their attorney, James Holahan ("Holahan"), filed papers opposing the application to dismiss, and also served the papers on Cobbs. Holahan's papers argued, *inter alia*, that the administrative action should not be dismissed in order to allow Plaintiff to pursue claims in federal court, since Plaintiff's Title VII claims were time-barred. More specifically, Holan referenced the fact that the EEOC had issued a right-to-sue letter on April 17, 2007, and that more than ninety days had elapsed. Significantly, Holahan's papers included a copy of the April 17, 2007 right-to-sue letter. *See*, Holahan Aff., Docket No. [#37-5] at ¶ ¶ 11-12 and Ex. C. On September 12, 2008, Holahan filed

---

[5]As part of its investigation, the NYSDHR received statements from two white employees, confirming that Schimpf used the word "nigger." Complaint [#1] ¶ 35.

a similar opposition with the Commissioner of the NYSDHR, which also included a copy of the April 17, 2007 right-to-sue letter, and served the same on Cobbs.  Despite Holahan's objections, on September 30, 2008,  the NYSDHR granted Plaintiff's request to dismiss the proceeding for administrative convenience.  *See*, Docket No. [#25-7].

At that point, the only administrative proceeding that remained open was the second, duplicative EEOC case. (Charge No. 16G-2006-04677)  As discussed above, the complaint in that second EEOC case was identical to the first complaint, which the EEOC dismissed on April 17, 2007.  It is unclear when Plaintiff learned of the duplicative EEOC proceeding.  But, in any event, in order to clear the way for Plaintiff to commence this action, he asked the EEOC to dismiss the duplicative complaint.  On September 19, 2008, the EEOC  issued a  second right-to-sue letter, concerning EEOC Charge No. 16G-2006-04677.

On December 5, 2008, Plaintiff commenced this action.  The Complaint purported to state claims under Title VII, the NYHRL, Section 1981, and the "Rochester City Ordinance prohibiting unlawful discrimination."  On March 15, 2010, Defendants filed a Motion to Dismiss [#25] the Complaint, pursuant to Rule 12(b)(1) and Rule 12(b)(6).  In pertinent part, Defendants argued that the Title VII claims were time-barred, because Plaintiff did not commence this action within ninety days of receiving the April 17, 2007 right-to-sue letter.  On October 21, 2010, counsel for the parties appeared before the undersigned for oral argument of the motions.  During oral argument, Plaintiff's attorney, Mr. Cobbs, orally represented that he and Plaintiff had never received the April 17, 2007 right-to-sue letter.  At that time, the Court was not aware of Cobbs' letter, dated  June 8,

11

2007, in which he discussed the dismissal of the first EEOC complaint.  Therefore, the Court directed Cobbs to submit affidavits from himself and Plaintiff, attesting to that fact that they had never received the April 17, 2007, right-to-sue letter.  On October 28, 2010, Cobbs and Plaintiff each filed affidavits [#35][#36], swearing that they never received the right-to-sue letter.  Additionally, Cobbs averred that he never knew about that right-to-sue letter's existence  until Defendants filed their motion to dismiss in this action.

A few days later, on November 4, 2010, Holahan filed a response to the affidavits by Cobbs and Plaintiff.  However, the Court failed to notice Holahan's filing.  In that regard, the Court did not expect Holahan to file anything in response to Cobbs' post-argument submissions, since, according to statements made during oral argument, the EEOC file had been lost, and it did not seem that Holahan would have any basis to contest the contentions by Cobbs and Plaintiff that they had not received the right-to-sue letter.  The Court was mistaken in that assumption, however, because Holahan submitted  a copy of Cobbs' letter to the NYSDHR, dated, June 8, 2007, referencing the dismissal of the EEOC complaint.  Additionally, Holahan indicated, in his submission,  that he had twice served copies of the April 17, 2007 right to sue letter on Cobbs in connection with his opposition to the dismissal of the NYSDHR complaint.  Nevertheless, at the time, the Court remained unaware of Holahan's submission.  As a result, on December 20, 2010, the Court issue a Decision and Order [#38], which, *inter alia*, denied Defendants' motion to dismiss the Title VII claims as untimely.  In making its determination, the Court relied on the representations by Cobb and Plaintiff that they had never received the April 2007 right-to-sue letter.

Subsequently, on January 26, 2011, the Honorable Marian W. Payson, United States Magistrate Judge, issued a Scheduling Order [#42] in this case, which directed, in pertinent part, that all fact discovery be completed by August 1, 2011, and that all dispositive motions be filed by December 1, 2011.

On March 25, 2011, Defendants filed the subject motion [#45] for summary judgment. The motion has three aspects. First, Defendants reiterate that the Title VII claims are time-barred, since Plaintiff did not commence this action within ninety days after the issuance of the April 17, 2007 right-to-sue letter. Alternatively, Defendants argue that Plaintiff received the right-to-sue letter on August 11, 2008, when Holahan served it on Cobbs in the NYSDHR administrative proceeding, and that Plaintiff did not commence this action within ninety days thereafter. Second, Defendants contend that even if the Title VII claims are not time-barred, the Title VII hostile environment claim must be dismissed, since Plaintiff cannot show that the alleged harassment was sufficiently severe or pervasive. Third, Defendants maintain that the retaliation claims fail, because Plaintiff cannot prove that he suffered an adverse employment action. On this point, Defendants state that they did not retaliate against Plaintiff by failing to hire him to plow, but instead, they asked him to plow and he never responded.

In response, Plaintiff contends that Defendants' motion is premature, and that he is entitled to conduct additional discovery pursuant to FRCP 56(d) (formerly FRCP 56(f)). Alternatively, Plaintiff argues that Defendants' motion must be denied on the merits. In that regard, Plaintiff states that his Title VII claims are not time-barred, because neither he nor Cobbs received the April 17, 2007 right-to-sue letter. Cobbs further indicates that he

did not become aware of the right-to-sue letter from Holahan in August 2008, because he never reviewed the papers that Holahan served on him.  Additionally, Plaintiff indicates that there are triable issues of fact as to whether the alleged hostile work environment was sufficiently severe and pervasive.  And lastly, Plaintiff states that there are triable issues of fact as to whether he suffered a retaliatory adverse action.  As to this contention, Plaintiff states that although Defendants may have called him on December 9, 2005 to ask him to plow, he did not recognize the number and had no way to return the call.  Plaintiff further states that Defendants retaliated against him by not calling him to plow in November 2005, and by failing to return his telephone calls.

On July 28, 2011, counsel for the parties appeared before the undersigned for oral argument.

## DISCUSSION

### Rule 56

Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).  "In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the

movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Gummo v. Village of Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)), cert denied, 517 U.S. 1190 (1996).  Once that burden has been established, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at 249.  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. Fed. R. Civ. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).

Courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question.  Because direct evidence of an employer's discriminatory intent will rarely be found, affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed, would show discrimination." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir.1997) (citations and internal quotations omitted).  However, a plaintiff may not defeat a motion for summary

judgment merely by relying upon "purely conclusory allegations of discrimination, absent any concrete particulars." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985), *cert. den*. 474 U.S. 829.

> *Rule 56(d)*

FRCP 56(d), which was previously titled 56(f), permits a litigant to conduct discovery if it is necessary to oppose a summary judgment motion.  Specifically, Rule 56(d) states:

> (d) **When Facts Are Unavailable to the Nonmovant**.  If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

FRCP 56(d) (West 2011).  Under this rule, the party seeking discovery must "make a specific proffer as to the discovery it would seek," and "a bare assertion that the evidence supporting a plaintiff's allegation is in the hands of the defendant is insufficient." *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 573 (2d Cir. 2005) (citation and internal quotation marks omitted).  More specifically,

> [i]t is well-established that, pursuant to Fed.R.Civ.P. 56(f) [,now 56(d)], a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Haran v. Dow Jones & Co., Inc.*, 216 F.3d 1072, 2000 WL 777982 at *3 (2d Cir. 2000) (table) (citation and internal quotation marks omitted).    It is not sufficient for the nonmovant to merely state that there has been "no discovery." *Id*.

16

In support of Plaintiff's application under Rule 56(d), Plaintiff's counsel indicates that Defendants moved for summary judgment only two months after the Scheduling Order was issued, and that fact discovery is not required to be completed until August 1, 2011. Plaintiff's counsel further states that because of his "extraordinarily heavy caseload and busy motion and trial calendar," he has not conducted any discovery, though he "intends to have conducted full discovery by the August 1, 2011 fact discovery deadline, including paper discovery and conducting party and non-party depositions." Cobbs Aff. ¶ ¶ 9-10. Plaintiff does not identify any particular discovery that he needs to oppose Defendants' motion, nor does he explain how such discovery would create a triable issue of fact. Consequently, Plaintiff's Rule 56(d) application is not properly supported, and is denied.

*Timeliness of Plaintiff's Title VII Claims*

Defendants maintain that Plaintiff's Title VII claims are time-barred because he did not commence this action within 90 days of the date he presumably received the first right-to-sue letter, dated April 17, 2007.  It is well settled that Title VII claims must be filed in federal court within ninety days of receipt of the EEOC's Right to Sue Letter. *See, e.g., Tubner v. West*, No. 97-7151, 1998 WL 639291 at *2 (2d Cir. Mar. 27, 1998) ("A private employee has ninety days from the receipt of a right-to-sue letter from the EEOC to commence a Title VII action in the federal court.") (unpublished) (citations omitted).  Where an attorney is representing a claimant before the EEOC, the attorney's receipt of the right-to-sue letter is notice to the claimant. *See, e.g., Ford v. Consolidated Edison Co. of New York, Inc.*, No. 03 Civ. 9587(PAC), 2006 WL 538116 at *7 (S.D.N.Y. Mar. 3, 2006) ("Plaintiff had constructive notice of his right-to-sue the moment his attorney received

notice from the EEOC, and therefore the limitations period began to run from that date.")
(citation omitted).

Significantly, for purposes of this action, the ninety-day statute of limitations begins
to run when a claimant or his attorney receives actual notice of the dismissal of the EEOC
complaint, even if they did not receive a right-to-sue letter. *See, Loftin v. New York State
Dep. of Mental Health*, Docket No. 03-7231, 80 Fed.Appx. 717, 2003 WL 22717674 at *1
(2d Cir. Nov. 17, 2003) ("Even assuming late or faulty mailing of the right-to-sue letters,
Loftin had actual notice of the EEOC's closure of his case upon receipt of the EEOC's
August 6, 2001 letter advising him that his case had been closed.  Despite having actual
notice of closure, Loftin filed his complaint on June 14, 2002, more than 90 days later.
Accordingly, his Title VII claim was time-barred."); *see also, Beggan v. New York Times*,
No. 91 Civ. 8343 (LJF), 1992 WL 111090 at *1 (S.D.N.Y. May 6, 1992) ("[T]here is no
dispute that Beggan contacted the EEOC on August 2, 1991, and was informed that this
claims had been dismissed.  That actual, verbal notification was sufficient to put Beggan
on notice of the EEOC's determination, and to trigger the statutory time limit for filing a
federal action.").

In the instant case, it is clear that as of June 2007, Cobbs had actual notice that the
EEOC had dismissed Plaintiff's complaint, since he references that dismissal in his letter
to the NYSDHR dated June 8, 2007.  Thereafter, on August 11, 2008, Cobbs was served
with an actual copy of the right-to-sue letter by Holahan.[6]  Thus, on two occasions, Plaintiff

---

[6]Cobbs previously represented to the Court that he never saw the April 17, 2007 right to sue letter until
Defendants filed their motion to dismiss in this acton.  Now, Cobbs states that he is "pretty certain that [he]
was not aware of the April 17, 2007 EEOC letter" prior to that. Cobbs Aff. [#51], ¶ 61.  In any event, the fact

received actual notice of the dismissal of the EEOC complaint, and he did not commence this action within ninety days of either notice.

The issue is complicated, however, by the fact that on September 19, 2008, the EEOC issued a second right-to-sue letter, concerning EEOC Charge No. 16G-2006-04677, and this action was commenced within ninety days of that date.  However, where, as here, the EEOC has issued two right-to-sue letters concerning identical claims, the second right-to-sue letter cannot extend the plaintiff's time to file in federal court.  Instead, the ninety-day statute of limitations for Title VII claims must be calculated from the earlier of the two right-to-sue letters.  *See, Melie v. EVCI/TCI College Admin*., No. 08 Civ. 5226(HB), 2009 WL 1404325 at *4 (S.D.N.Y. May 20, 2009) ("Ordinarily, when a plaintiff has been issued two right-to-sue letters, the time to sue on a Title VII claim runs from the receipt of the first letter.")  (citations omitted), *affirmed*, 374 Fed.Appx. 150 (2010); *accord, Daniel v. Long Island Housing Partnership*, No. 08-CV-01455 (JFB) (WDW), 2009 WL 702209 at *6 (Mar. 13, 2009); *Jeter v. New York City Dep. of Educ.*, 549 F.Supp.2d 295, 307 (E.D.N.Y. 2008). The Court has considered whether there are any grounds to equitably toll the limitations period, and finds that there are none. *See, e.g., Davis v. Metropolis Country Club*, 145 F.Supp.2d 321, 324 (S.D.N.Y. 2001) (District Court found that equitable considerations might warrant tolling the statute of limitations, where claimant refrained from commencing action, after an EEOC investigator told him that the EEOC was continuing to investigate

---

that Cobbs purportedly chose not to read Holahan's August 2008 submission containing the right-to-sue letter is of no moment.  *See, e.g., Williams v. Thomson Corp.*, 383 F.3d 789, 790 (8th Cir. 2004) ("Williams' explanation that she did not read the right-to-sue letter until two weeks after it arrived at her forwarding address, does not save her claims from being time-barred.") (citation omitted).

his claim, and that his rights were protected, even though a right-to-sue letter had issued).

Therefore, the Court finds that Plaintiff's Title VII claims are time-barred, and, based upon

such finding, the Court need not address Defendants' alternative arguments directed at the

Title VII hostile environment claim.

### The NYHRL and Section 1981 Retaliation Claims

The substantive legal principles for claims under Title VII also apply generally to

claims under Section 1981 and the NYHRL. *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106

(2d Cir. 2010); *see also, Fincher v. Depository Trust and Clearing Corp.*, 604 F.3d 712, 720

(2d Cir. 2010) ("Retaliation claims made under 42 U.S.C. § 1981, like those made under

Title VII, are evaluated using a three-step burden-shifting analysis.").  Such principles for

retaliation claims are clear:

> "Retaliation claims under Title VII are evaluated under a three-step
> burden-shifting analysis." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166,
> 173 (2d Cir.2005); *see also McDonnell Douglas Corp. v. Green*, 411 U.S.
> 792, 802-05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  First, the plaintiff must
> establish a prima facie case of retaliation by showing: " '(1) participation in
> a protected activity; (2) that the defendant knew of the protected activity; (3)
> an adverse employment action; and (4) a causal connection between the
> protected activity and the adverse employment action.' " *Jute*, 420 F.3d at
> 173 (*quoting McMenemy v. City of Rochester*, 241 F.3d 279, 282-83 (2d
> Cir.2001)).  The plaintiff's burden in this regard is "*de minimis*," and "the
> court's role in evaluating a summary judgment request is to determine only
> whether proffered admissible evidence would be sufficient to permit a
> rational finder of fact to infer a retaliatory motive." *Id*. (internal quotation
> marks omitted).
>
> If the plaintiff sustains this initial burden, "a presumption of retaliation arises."
> *Id*. The defendant must then "articulate a legitimate, non-retaliatory reason
> for the adverse employment action." *Id*. If so, "the presumption of retaliation
> dissipates and the employee must show that retaliation was a substantial
> reason for the adverse employment action." *Id*. A plaintiff can sustain this
> burden by proving that "a retaliatory motive played a part in the adverse
> employment actions even if it was not the sole cause[;] if the employer was

motivated by retaliatory animus, Title VII is violated even if there were objectively valid grounds for the [adverse employment action]." *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir.1990).

*Hicks v. Baines*, 593 F.3d 159, 164-165 (2d Cir. 2010).

To make a prima facie showing of an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Kessler v. Westchester County Dept. of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (*quoting Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 2415 (2006)).

In this case, Defendants contend that Plaintiff cannot prove that he suffered an adverse action.[7]  In particular, Defendants maintain that Plaintiff cannot prove that they refused to hire him for the 2005-2006 snow plowing season, as he claims.  In that regard, Defendants state that Plaintiff was called on December 9th and asked to plow, but he never returned the call and never contacted Hudson or Central thereafter.   According to Defendants, Plaintiff's failure to return the December 9th call, or to otherwise contact them, in addition to the fact that he  was seeking employment with Veltri, caused them to conclude that he was not interested in working for them.  Accordingly, Defendants have

---

[7]It appears that Plaintiff can otherwise establish a prima facie case, since he clearly engaged in protected activity of which the employer was aware, and there was close temporal proximity between the protected activity and the alleged retaliation.  However, any retaliation claim that arose prior to December 5, 2005, is time-barred, since it occurred more than three years before he commenced this action.  Additionally, Defendants are entitled to summary judgment on any retaliation claim arising prior to December 9, 2005, since Plaintiff has not come forward with any evidentiary proof in admissible form that Defendants were performing plowing work at the airport prior to that date.  Plaintiff's mere assertion that it snowed in late November is not sufficient to overcome Carozza's affidavit, which indicates that the Airport did not request plowing until December 9, 2005.

proffered a non-discriminatory reason for their failure to hire Plaintiff for the 2005-2006

plowing season.  However, Plaintiff maintains that this proffered reason is false, and that

Defendants were motivated by a retaliatory motive.  On this point, Plaintiff disputes

Carozza's contention that he never called looking for work.  Instead, Plaintiff maintains that

he called Carozza in December 2005, and thereafter, looking for work, but Carozza did not

return his messages:

> [I]n December 2005, and many times thereafter, I called Defendant Carozza
> because I was interested in plowing at the Airport during the 2005-2006
> snow season as I had always done in the past. . . . However, Carozza never
> ever returned my calls.  Not only did I call Carozza many times between
> December 2005-June 2008, but I also tried to communicate with him through
> coworkers and mutual acquaintances about plowing during the 2005-2006
> snow season . . . .   However, Carozza refused to respond to my
> communications.

Pl. Aff. [#50] at ¶ 93-97.  Plaintiff contends that Carozza's statements to the contrary are

untrue, which, along with the close temporal proximity to his protected activity, raises a

triable issue of fact as to whether Defendants were motivated by retaliatory intent.

Viewing the evidence in the light most-favorable to Plaintiff, the record indicates that

Defendants initially ignored Plaintiff's complaints about Schimp's racist comments, and only

took action against Schimpf after Plaintiff filed a complaint with the Monroe County

Affirmative Action Office.  Further, the record indicates that one month after Plaintiff's

affirmative action complaint was decided against Defendants, they attempted to contact

him to plow, and when he failed to return the message, they removed him from the list of

plow drivers, even though he subsequently called and left messages about wanting to

plow, and even though he had been plowing for them for sixteen years.  On this point, the

Court notes that Defendants have not claimed that it was their usual practice to

permanently remove a driver from the list, if he failed to return a single phone call. Considering the record in this light, the Court finds that there are triable issues of fact that preclude summary judgment on the retaliation claims under the NYHRL and Section 1981.

CONCLUSION

Defendants' summary judgment motion [#45] is granted in part and denied in part. Defendants are granted judgment on the Title VII claims.  Additionally, Defendants are granted summary judgment on the NYHRL and Section 1981 retaliation claims, to the extent that they allege retaliation prior to December 9, 2005.  Otherwise, Defendants' motion is denied.  The NYHRL and Section 1981 retaliation claims may go forward to the extent they allege retaliation during the 2005-2006 snow plowing season, occurring after December 9, 2005.

SO ORDERED.

Dated:          September 5, 2011
                Rochester, New York

                                        ENTER:


                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Jusdge